IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KIM WOOD                                                                                    PLAINTIFF

V.                                           NO. 13-5271

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Kim Wood, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB), under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff filed her current application for DIB on October 19, 2010, alleging an inability to work since February 24, 2009, due to pustular psoriasis, migraines, temporomandibular joint dysfunction, vertebral sublation, twisted spine, scoliosis, and loss of vision. (Tr. 92-93, 120, 138). An administrative hearing was held on March 14, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 30-49).

By written decision dated July 17, 2012, the ALJ found that during the relevant time period, which was February 24, 2009 to the date of the decision, Plaintiff had the following medically determinable impairments: headaches and skin disorder. (Tr. 23). However, the ALJ also found that Plaintiff did not have an impairment or combination of impairments that had

significantly limited (or is expected to significantly limit) the ability to perform basic work related activities for 12 consecutive months and therefore, Plaintiff did not have a severe impairment or combination of impairments. (Tr. 23). Accordingly, the ALJ found that Plaintiff had not been under a disability from February 24, 2009, through the date of the decision. (Tr. 25).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional information, and denied that request on September 23, 2013. (Tr. 1-6). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 8). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 14, 16).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnard, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnard, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In

other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III. Discussion:

Plaintiff raises the following issues on appeal: 1) The ALJ erred in failing to fully and fairly develop the record, and 2) The ALJ erred in stopping the sequential evaluation at step two. (Doc. 14).

#### A. Failure to Fully and Fairly Develop the Record:

Plaintiff argues that the ALJ did not attempt to obtain critical medical reports concerning the level of work activity that Plaintiff could do on a sustained basis in view of the combination of impairments, and that there is not treating source evidence specifically addressing whether Plaintiff's diagnoses affect her work-related functional abilities. Plaintiff also argues that based upon a diagnosis that was received after the relevant time period, the ALJ evaluated the wrong illness.

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They

simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." Mans v. Colvin, No. 13-CV-2103, 2014 WL 3689797 at *4 (W.D. Ark., July 24, 2014)(quoting Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

The record in this case reflects that although Plaintiff sought treatment from Dr. Kenneth L. Ubben, a dermatologist, for her pustolosis between September of 2003 and June of 2007, Plaintiff sought minimal treatment during the relevant time period, as follows:

1. September 17, 2010, Plaintiff presented herself to Northwest Medical Center in Bentonville, Arkansas, complaining of a headache. (Tr. 181). At that time, it was reported that Plaintiff was able to ambulate independently, and could perform all activities of daily living without assistance. (Tr. 183). It was also reported that Plaintiff's skin was warm and dry with normal turgor, without lesions or rashes. (Tr. 187). The discharge diagnosis was severe migraine headache. (Tr. 187).

2. On October 28, 2011, x-rays of Plaintiff's cervical spine at Ozarks Community Hospital revealed mild degenerative disc disease, C5-6, and nonspecific straightening of the usual cervical lordosis. (Tr. 235).

3. On December 12, 2011, Plaintiff was screened by a Physical Therapy Department, and noted to smoke one pack of cigarettes per day for 20 years. (Tr. 242).

4. On December 13, 2011, an initial examination was conducted at Gravette Physical Therapy, because Plaintiff reported migraines and neck pain. (Tr. 240). Plaintiff was referred to

AO72A
(Rev. 8/82)

physical therapy closer to her home, secondary to her financial situation and lack of transportation to be able to drive 40 minutes each way for physical therapy. (Tr. 241). There is no record that Plaintiff ever attended physical therapy.

     5. On April 24, 2012, Plaintiff presented to Dr. Nancy L. Jones, her treating physician. (Tr. 238). Plaintiff complained that she hurt all over, and had a knot in the left thigh area for about two years, which appeared to be a lipoma. Plaintiff reportedly had tried Tylenol, Advil, and Aleve for joint pains and muscle pains. (Tr. 238). It was reported that Plaintiff saw Dr. Ubben for a pustular rash, that he gave her Doxycycline, and Plaintiff asked Dr. Jones for a prescription for that. Dr. Jones recommended to check a Vitamin D level due to the malaise, body aches and tiredness, and noted that she did have a pustular type rash.  Plaintiff was assessed with:

    1. Myalgia
    2. Dermatitis
    3. Polyuria
    4. Vitamin D deficiency.

(Tr. 238). It is noteworthy that Dr. Jones did not schedule Plaintiff for follow up treatment. Nor did Dr. Jones restrict Plaintiff from working.

     It is clear that Plaintiff sought little treatment for any of her alleged impairments during the relevant time period.  At the hearing before the ALJ, Plaintiff testified that she was not taking any medications for her skin disorder because she lost her insurance and had to stop going to see the dermatologist because she could not afford it. (Tr. 34). However, also at the time of the hearing, Plaintiff testified that she then had insurance through her husband's insurance, and still had not scheduled an appointment with the dermatologist. (Tr. 40).  In addition, there is no evidence that Plaintiff was refused or denied medical treatment due to a lack of financial

AO72A
(Rev. 8/82)

resources or that she sought care from a free health clinic. Finally, Plaintiff was reported as smoking one pack of cigarettes per day, and was therefore clearly able to afford cigarettes.

Plaintiff now argues that the ALJ had the wrong diagnosis, based upon the opinion of a dermatologist who saw her after the ALJ's decision. Plaintiff presented this evidence to the Appeals Council, who indicated that it looked at said medical records and concluded the new information was concerning a later time. (Tr. 2). "Therefore, it does not affect the decision about whether you were disabled beginning on or before July 17, 2012.  If you want us to consider whether you were disabled after July 17, 2012, you need to apply again. We are returning the evidence to you to use in your new claim." (Tr. 2).

The Court finds that the existing medical sources contained sufficient evidence for the ALJ to make a determination, and that the ALJ did not fail to fully and fairly develop the record.

### B.     Stopping the Sequential Evaluation at Step Two:

Plaintiff argues that the ALJ did not apply the correct standard in his evaluation of her impairments, singly or in combination.  Once again, the Court believes Plaintiff did not present any relevant medical evidence to support the existence of a severe impairment during the relevant period, and that the ALJ was correct in making his step two decision.

In addition, Plaintiff argues that the ALJ did not make a credibility determination, which was required, based upon Plaintiff's pain.  The Court disagrees. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with finding that Plaintiff had no severe impairment or combination of impairments "for the reasons explained

below." (Tr. 24). The ALJ noted that it was clear that a number of years prior to the alleged onset date, Plaintiff had a skin disorder which was causing her significant problems. However, Plaintiff was working during that time period. (Tr. 25). The ALJ found that the records and testimony did not support the degree of limitation alleged, noting that although Plaintiff had insurance for three months prior to the hearing, she did not seek treatment for the blisters. (Tr. 25). The ALJ also noted that there was no inpatient treatment history for migraines or blisters and no examining physician indicated Plaintiff was unable to work. The ALJ noted Plaintiff's limited medical treatment, the fact that Plaintiff was not taking any medications at the time of the hearing, and the fact that Plaintiff was working during the time Plaintiff was experiencing significant problems with her skin condition, from 2003 through 2007. (Tr. 24, 25). Finally, the ALJ afforded greater weight to the findings of Plaintiff's attending and examining clinicians and physicians, due to their treatment history and degree of contact with Plaintiff. (Tr. 25). Although the ALJ did not specifically mention each factor set forth in Polaski v. Heckler, 751 F.2d 943, 948 (8th Cir. 1984), it is clear that the ALJ considered several factors that detracted from Plaintiff's credibility, consistent with the Polaski factors.

      In Caviness v. Massanari, 250 F.3d 603 (8th Cir. 2001), the Court stated that Plaintiff had the burden of showing a severe impairment that significantly limited her physical or mental ability to perform basic work activities, but that said burden at this stage of the analysis is not great. Id. at 605. The Court further stated that the sequential evaluation process may be terminated at step two only when Plaintiff's impairment or combination of impairments would have no more than a minimal impact on her ability to work. Id. The Court believes there is substantial evidence to support the ALJ's finding that Plaintiff's impairments would have no

more than a minimal impact on Plaintiff's ability to work.

**IV.     Conclusion:**

Accordingly, based upon the foregoing, and after carefully reviewing the record, the Court finds there is substantial evidence to support the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The Court further finds that Plaintiff's Complaint should be dismissed with prejudice.

IT IS SO ORDERED this 8th day of December, 2014.

/s/ *Erin L. Setser*

HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)